## Richmond.

### GRONER AND ALS. v. CITY COUNCIL OF PORTSMOUTH.

May 10th, 1883.

1. GRANTS—*Ways and means.*—It is well settled that a general grant of power, carries with it the necessary means to effectuate the purpose of the grant.

2. HARBOR COMMISSIONERS—*Powers—Inspector.*—Act approved March 3d, 1882—Session Acts 1881-2, p. 216—entitled "an act creating a board of harbor commissioners of Norfolk and Portsmouth," provides that the governor shall appoint seven commissioners, and defines their duties; that material excavated in the harbor shall be deposited in designated places; that rules and regulations be made to preserve the harbor; that to defray the expenses there shall be assessed on Norfolk county, two-sevenths, on Norfolk city, three-sevenths, and on Portsmouth, two-sevenths of the estimate. Commissioners designated such a place, and to enforce the deposit there, employed an "inspector of dumping" at $60 a month salary. In their assessment $750 was included to pay that salary. Portsmouth, admitting the amount is reasonable, yet refuses to pay any portion of the assessment on the ground that the employment of the inspector is unauthorized by law. The testimony shows that his employment is essential to enforce the regulation and to prevent the obstruction of the approaches of the harbor.

HELD:

> The board hath lawful authority to appoint such inspector, and to assess the sum necessary to pay his salary upon the city of Portsmouth ratably with the county and the city of Norfolk, and the *mandamus* is awarded as prayed for.

Upon petition of V. D. Groner and six others constituting "the board of harbor commissioners of Norfolk and Portsmouth and Norfolk county," appointed and organized as provided by an act of the general assembly, approved March 3d, 1882,

against the Council of the city of Portsmouth, composed of John H. Hume and fourteen others, to command the said council to make the appropriation of the sum of $600, and pay over the same to the petitioners as such board; that being the ratable share of the said city of Portsmouth of the estimated expenses incurred by the said board in carrying out the provisions of the act of assembly aforementioned, for the twelve months from August 1st, 1882, but the said council passed a resolution that no appropriation will be made by it to pay that share.

The remaining facts are set forth in the opinion of the court.

*W. H. Stewart,* and *Attorney-General F. S. Blair,* for the petitioners.

*A. S. Watts,* for the respondents.

LEWIS, P., delivered the opinion of the court.

This is an application for a writ of *mandamus.* The petitioners compose the Board of Harbor Commissioners of Norfolk and Portsmouth and Norfolk county. The writ is prayed for to command the council of the city of Portsmouth to make an appropriation of $600, as its proportionate share of an assessment of $2,100 made by the petitioners, to defray necessary expenses for twelve months in carrying out the provisions of the statute under which they were appointed and acting.

The act was approved March 3, 1882, and is entitled "an act creating a Board of Harbor Commissioners of Norfolk and Portsmouth, and for the preservation of the harbor of Norfolk and Portsmouth." It requires the governor to appoint seven commissioners, and defines their comprehensive and important duties. By the fifth section it is provided, that "when any dredging or excavation shall be done in the harbor, the material excavated shall only be deposited at such places in the river as

may be designated by the said harbor commissioners." The sixth section provides, that "the said Board of Harbor Commissioners shall have power to make and enforce such rules and regulations for the preservation of the harbor as they may, from time to time, deem necessary." And by the eighth section it is provided, "that for the purpose of defraying the necessary expenses incurred by the Board of Harbor Commissioners in carrying out the provisions of this act, the county of Norfolk shall be assessed and shall pay two-sevenths of the estimated expenses thereof, the city of Portsmouth two-sevenths, and the city of Norfolk three-sevenths thereof." Acts of Assembly, 1881–2, p. 216.

By one of the rules and regulations adopted by the commissioners, after their appointment and organization, a place was designated for the deposit of the material excavated in the harbor. And, in order to enforce the rule, an agent, known as the inspector of dumping, was employed at a salary of $60 per month, whose duty it is to be present during each day at the place designated, to see that the boats containing the material excavated are unloaded within the limits prescribed, and to make daily reports to the Board of Harbor Commissioners. In the assessment made by the board, an item of $750 was included to pay the annual salary of the inspector. The city of Portsmouth, admitting that the amount of the salary is not unreasonable for the services rendered, yet refuses to pay any portion of the assessment on the ground that the employment of the inspector is without authority of law. And the single question now to be determined relates to the legality of that appointment.

It is a well settled principle, of frequent application, that a general grant of power implies the necessary means for carrying into execution the power granted. But the power to select the means must be exercised with discretion, and the means employed must be plainly appropriate to the end in view. This principle, so clearly stated and powerfully enforced by Chief Justice Marshall in *McCulloch* v. *The State of Maryland*, 4

Wheat. 421, applies to, and is conclusive of, the present case. By the provisions of the act already quoted, the harbor commissioners are authorized to designate the places at which the material excavated in the harbor shall be deposited; and, in addition, they are expressly empowered to make and to enforce such rules and regulations for the preservation of the harbor as they may deem necessary. This implies the power to employ such reasonable assistance as may be necessary to secure enforcement of the rules so made. The appointment of an inspector in this case was made upon the earnest and repeated recommendations of the engineers in charge of the government improvements in the Norfolk harbor. The testimony abundantly shows that his employment at the designated dumping grounds is essential to enforce the regulations of the commissioners, and to prevent the obstruction of the approaches to the harbor. The rule *nisi* must, therefore, be made absolute, and a writ of *mandamus* awarded, as prayed for in the petition.

MANDAMUS AWARDED.